BROWN, Chief Judge.
| defendant, Glen Dale King, who was indicted for second degree murder and two counts of attempted second degree murder, pled guilty to manslaughter, pursuant to a plea agreement. He was subsequently sentenced to 40 years at hard labor. Defendant now appeals.[1] For the following reasons, defendant’s conviction and sentence are affirmed.

Facts

On July 12, 2006, the Bastrop Police Department received a call around 8:47 p.m. in reference to gunshots fired in the area of Clara Street and Van Avenue. When officers arrived, they were informed that three victims had been transported to the emergency room. Antonio Sharkey *1044 was shot in his right chest, Frederick Ra-bun was shot in his right arm, and Darell Sharkey was shot in his right leg. Antonio Sharkey died at the hospital. According to witnesses, defendant, Glen Dale King, a.k.a. “Ned,” had an argument with Darell Sharkey at a family barbecue. Frederick Rabun got involved in the argument. King left the gathering and came back, walking up Van Avenue. Several people yelled that King had a gun, and when King got to the intersection of Van Avenue and Roberts Street, he opened fire. King admitted that he had fired numerous rounds toward the area where Rabun was, but stated that he did not see Darell or Antonio in the area. King stated that he opened fire after he observed Rabun holding a handgun.
Pursuant to a plea agreement, King pled guilty to a reduced charge of manslaughter. As part of the plea agreement, the state was to dismiss the |2remaining two counts of attempted second degree murder and agreed not to file a habitual offender bill of information. The trial court ordered a pre-sentence investigation report.
A sentencing hearing was conducted. The trial court reviewed the facts of this case and the pre-sentence investigation report, including King’s criminal, personal and social history. The court noted that it had received numerous letters sent on behalf of King claiming that the victim, Antonio Sharkey, was like a brother to King. Also, the court noted that the victim’s mother asked the court to sentence King to no more than 25 years. In reviewing King’s criminal history, the court noted that King’s adult record was “horrendous” and one of the longest it had ever seen. Included in that history were three felony convictions and a number of misdemeanor arrests for battery and domestic violence. On May 29, 1993, King was charged with attempted manslaughter, but later pled guilty to aggravated battery and was sentenced to time served. On June 11, 1996, King was charged with attempted second degree battery, but later pled guilty to aggravated battery and was sentenced to two years at hard labor, to run concurrently with a previous distribution of cocaine charge. Also, the court noted the instant offenses and several domestic abuse battery charges that were to be dismissed upon sentencing in this case.
Further, the court reviewed the sentencing guidelines set forth in La. C. Cr. P. art. 894.1. The court noted that King was 33 years old and a fourth felony offender. The court stated that King’s conduct threatened and caused serious harm, as someone died, and that there was no provocation for King’s | ^conduct, nor was there anything to justify his actions. The court stated that King was not likely to respond affirmatively to probationary treatment because he has failed at probation and parole in the past and noted that King was not eligible for probation. The court found that King received substantial leniency in the plea agreement at the victim’s mother’s request. Considering the above, the trial court sentenced King to 40 years at hard labor.

Discussion

The defense contends that the maximum sentence imposed on King is excessive, and that the goals of punishment and rehabilitation can be accomplished in this case with a less harsh sentence, particularly in light of King’s acceptance of his responsibility for the unintended death of a man that he considered to be his brother.
The Eighth Amendment’s proscription of cruel and unusual punishment not only prohibits barbaric punishment but also sentences that are disproportionate to the offense committed. Louisiana’s constitution likewise proscribes cruel, unusual and excessive sentences. An excessive *1045 sentence is one that is grossly disproportionate to the offense committed. State v. Dunn, 30,767 (La.App.2d Cir.06/24/98), 715 So.2d 641. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence. State v. Colvin, 11-1040 (La.03/13/12), 85 So.3d 663; State v. Humphrey, 445 So.2d 1155. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court |4rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate. State v. Humphrey, supra. A court’s proportionality analysis should be guided by the gravity of the offense and culpability of the offender. State v. Guzman, 99-1528, 99-1753 (La.05/16/00), 769 So.2d 1158.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 07-2031 (La.02/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.02/13/08), 976 So.2d 802; State v. Woods, 41,420 (La.App.2d Cir.11/01/06), 942 So.2d 658, writs denied, 06-2768, 06-2781 (La.06/22/07), 959 So.2d 494. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense involves violence upon a victim. State v. Germany, 43,239 (La.App.2d Cir.04/30/08), 981 So.2d 792; State v. Black, 28,100 (La.App.2d Cir.02/28/96), 669 So.2d 667, writ denied, 96-0836 (La.09/20/96), 679 So.2d 430.
King substantially benefitted from the plea agreement and reduced sentence exposure as he was initially charged with second degree murder, which carries a mandatory sentence of life in prison, and two counts of attempted second degree murder, each of which carries a possible maximum |fi50 year hard labor sentence without benefits. La. R.S. 14:27(D); La. R.S. 14:30.1.
Considering King’s criminal history, the benefit he received from the plea agreement, and the violent nature of his act the trial court’s imposition of the maximum sentence for the reduced charge of manslaughter does not shock the sense of justice, nor is it disproportionate to the severity of the offense. Therefore, we find that defendant’s excessive sentence assignment of error is without merit.

Conclusion

For the foregoing reasons, defendant’s conviction and sentence are affirmed.

. On July 26, 2012, King filed an application for post-conviction relief alleging that he had been denied his right to an appeal. The state failed to file any objections or answer to BCing’s application. On November 15, 2012, the trial court granted King leave of court to file an out-of-time appeal of his sentence as excessive. This appeal followed.