STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-280


STATE OF LOUISIANA

VERSUS

JILL TALL

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 09-995
HONORABLE LORI A. LANDRY, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.


AFFIRMED AND REMANDED WITH INSTRUCTIONS.


Paula C. Marx
Louisiana Appellate Project
Post Office Box 80006
Lafayette, Louisiana 70598-0006
(337) 991-9757
COUNSEL FOR DEFENDANT/APPELLANT:
    Jill Tall


J. Phil Haney
District Attorney − Sixteenth Judicial District
Angela B. Odinet, Assistant District Attorney
307 Church Street
St. Martinville, Louisiana 70582
(337) 394-2220
COUNSEL FOR APPELLEE:
    State of Louisiana

**GENOVESE, Judge.**

In this criminal case, Defendant, Jill Tall, appeals her sentence pursuant to her plea-generated conviction for first degree vehicular negligent injuring. Defendant alleges that the trial court abused its discretion in sentencing her to a maximum sentence and that it imposed overly onerous and impermissible conditions of probation. For the following reasons, we affirm Defendant's sentence and remand the case to the trial court to either establish a payment plan for restitution or allow her probation officer to do so, subject to court approval.

### FACTS

According to the State's factual recitation in the record at the taking of Defendant's guilty plea:

> [O]n or about the date alleged in the bill of information, [Defendant] was operating a motor vehicle whereby she struck Julie Reaux[,] who was holding her six-month-old son identified as "[G.R.[1]]" After she was struck, she dropped her son[,] who subsequently hit his head and sustained serious bodily injury, particularly, a fracture to his skull area. She was later made contact with by a responding deputy. She did submit to a standard field sobriety test and did give indication for intoxication[,] and she also registered a proper breath sample of point two zero (0.20) blood alcohol concentration.

At the sentencing hearing, G.R.'s mother, Ms. Reaux, stated that the child had two fractures that "'swole' up his whole skull [and that if] he didn't have the fractures, his brain right now would be putty[.]" At the time of sentencing, G.R. was three years old and undergoing tests to evaluate possible further damages. He was "starting to get his speech tested because he is still babbling."

Ms. Reaux also sustained injury in the accident. She related that according to her doctor, her "lower back and [her] leg was [sic] ran over." She sustained a fractured ankle and a knee injury and had pre-existing arthritis in her low back and

---

[1]The minor victim's initials are used pursuant to La.R.S. 46:1844(W).

legs.  According to Ms. Reaux, she had to change her educational path and is now "furthering [her] education to be a medical office assistant so [she] wouldn't have to be on [her] legs so much."  She stated that she is no longer able to enjoy an athletic lifestyle and cannot even ride a bicycle.  She asked the court to impose the maximum sentence on Defendant.

Defendant, though present at her sentencing, did not testify personally. Through counsel, she expressed her sincere sorrow for the harm that she caused. As mitigating factors, Defendant's counsel claimed that his client "was trying to extricate herself from [an] altercation, and . . . she was unaware that anyone was behind her[,] and she had no idea that she was going to cause the injury or the accident."  Defendant's counsel further stated that Defendant was a single mother and the sole provider for her four-year-old child, that she had worked her way up to head cashier at Lowe's, and that she would lose her job and be unable to make meaningful restitution if she were incarcerated.

The trial court pointed out Defendant's blood alcohol level was 0.203[2] and commented, "[s]o whether you were trying to extricate yourself from an altercation or whether you knew you would injure someone is really not the issue.  When you're that drunk, we assume you don't, and this is what happens.  That's why it's prohibited."  The trial court also noted Defendant "did the same thing" while she was awaiting sentencing on this conviction.  In addressing Defendant, the trial court stated that on "July 28, 2011, you were arrested for DWI again[,] and you blew 0.201."

While the trial court believed Defendant has "lots of promise," she also believed Defendant "continue[s] to have a problem with drinking and driving," and

_____

[2]According to La.R.S. 14:98(A.)(1), "[t]he crime of operating a vehicle while intoxicated is the operating of any motor vehicle . . . when . . . (b) [t]he operator's blood alcohol concentration is 0.08 percent or more . . . ."

2

"the dangerous behavior has not corrected itself." The trial court also stated that she did not "believe [Defendant's] drinking and driving started in 2009" and that she was sentencing Defendant "for the fact that [she was] involved in a very volatile situation and drinking and driving" and caused "major injury to this young baby and his mother."

## PROCEDURAL HISTORY

On May 21, 2009, Defendant was charged with two counts of first degree vehicular negligent injuring, violations of La.R.S. 14:39.2, and hit and run driving, a violation of La.R.S. 14:100(C)(2). On July 7, 2010, she signed a certificate outlining her open-ended plea agreement to one count of first degree vehicular negligent injuring and pled guilty to that offense.

At the plea hearing on July 7, 2011, Defendant told the trial court that she understood the statute under which she was charged, the definition of "serious bodily injury" contained in it, and the possible sentence for the offense. The trial court then ordered a presentencing investigation (PSI) and subsequently sentenced Defendant on September 28, 2011, to serve five years at hard labor, with all but one year suspended, and with supervised probation for three years. The trial court also imposed the following special conditions:

1) pay a fine of $2,000.00 plus cost of court over the course of probation on a schedule set by the probation officer;

2) pay $500.00 to the District Attorney's office for cost of prosecution;

3) pay $500.00 to the Indigent Defender Board for representation of defendant over the course of probation;

4) within seven days of signing up for probation, Defendant is to take all the necessary steps to complete a Substance Abuse Evaluation and follow all recommendations for treatment;

5) attend two AA/NA meetings for every week on probation;

3

6)     within seven days of signing up for probation, Defendant is to take all necessary steps to complete a Mental Health Evaluation and follow all recommendations for treatment;

7)     pay restitution in the amount of $7,256.02 to be paid over the course of probation on a schedule set by the probation officer;

8)     within ninety days of Defendant signing up for probation, either the defense or the State has the right to have a restitution hearing set and traverse the amount based on an increase or decrease;

9)     Defendant is not to drink or involve herself with any illicit drugs or drug abusers;

10)    Defendant is not to go to bars or casinos during probation, anywhere alcohol is the main source of business;

11)    complete forty, eight-hour days of community service while on probation;

12)    pay for and complete one MADD Impact Panel;

13)    Defendant is prohibited from driving a vehicle while on probation unless the vehicle is outfitted with an ignition interlock device;

14)    within seven days, sign up and complete a Driver Improvement Program within the first six months of signing up for probation;

15)    install an ignition interlock device on vehicle before Defendant is able to drive and provide proof to the Department of Corrections of the installation; and,

16)    Defendant is given credit for time served awaiting disposition of sentence.

The trial court also specifically noted that three weeks after entering her guilty plea, but before her sentencing, Defendant was arrested on July 28, 2011, in Calcasieu Parish on a driving while intoxicated charge wherein "[s]he blew 0.201" in her breath test.

Defendant filed a motion to reconsider her sentence on November 7, 2011. That motion was denied on November 18, 2011, without a hearing. Defendant has appealed her sentence.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is

4

an error patent regarding the conditions of probation. Additionally, there is an error patent regarding restitution, which will be discussed in assignment of error number five.

At sentencing, the trial court stated in pertinent part:

> So it's the sentence of this [c]ourt, ma'am, that you serve five years hard labor. I'll suspend all but one. Thereafter, I place you on three years active supervised probation with the Department of Corrections, all the usual conditions of probation, the following special: That you pay a fine of two thousand dollars ($2,000.00) plus court costs over the course of probation on a schedule set by the probation officer, you pay two hundred and fifty dollars ($250.00) to the -- five hundred dollars ($500.00) to the District Attorney's Office for their costs of prosecution, five hundred dollars ($500.00) to the PDO for their representation of you over the course of probation. Within seven days[,] sign up for probation, ma'am.

In *State v. Stevens*, 06-818, p. 3 (La.App. 3 Cir. 1/31/07), 949 So.2d 597, 599-600, this court stated:

> [W]e find nothing in the statute which prohibits the trial court from seeking assistance from outside sources, including Probation and Parole, in formulating the appropriate payment plan. In fact, Probation and Parole may be in a better position to formulate a workable payment schedule than is the trial court. In taking advantage of this assistance, the trial court in no way cedes its responsibility to impose the payment plan, and it only becomes effective upon approval of the trial court.

In the instant case, the trial court ordered that Defendant's payment plan for the fines and costs be formulated on a schedule set by a probation officer, but without approval by the trial court. Though the trial court may delegate the establishment of a payment plan to a probation officer, if that is in fact done, it must be done with court approval. *State v. Mayes*, 07-1500 (La.App. 3 Cir. 4/30/08), 982 So.2d 265, *writ denied*, 08-1175 (La. 2/6/09), 999 So.2d 768. Accordingly, we remand this case to the trial court with the instruction that either a payment schedule for fines and costs be formulated by the trial court, or else that

5

the trial court permit a payment schedule to be formulated by the probation officer, subject to approval by the trial court.

## ASSIGNMENTS OF ERROR

In her appeal, Defendant presents the following five assignments of error:

I. The trial court abused its discretion in sentencing Jill Tall to a maximum sentence for First Degree Vehicular Negligent Injuring, when the record does not support a finding that Ms. Tall was the worst type of offender, or that the accident, while tragic, was not the worst offense.

II. The trial court erred in imposing conditions of probation that are too onerous and not reasonably related to rehabilitation.

III. Attendance at two AA or NA meetings regardless of the outcome of a substance abuse evaluation violates Louisiana statutory requirements set forth in [La.Code Crim.P.] art. 895[] and Appellant's right to fundamental fairness required by the Fourteenth Amendment.

IV. The trial court erred in prohibiting Jill Tall from driving a vehicle during the entirety of her probation unless the vehicle is outfitted with an ignition interlock device.

V. The trial court erred in ordering an amount of restitution which is subject to change. The trial court further erred in allowing the probation officer to set up the schedule for payment of that restitution.

### *ASSIGNMENT OF ERROR NUMBER ONE:*

Defendant argues the trial court abused its discretion in sentencing her to a maximum sentence when the record does not support a finding that she is the worst type of offender or that the accident, while tragic, was the worst offense. In this assignment of error, she also claims that the $2,000.00 fine is excessive.

We note, however, that the fine was actually imposed as a condition of probation, not actually as part of Defendant's sentence. Therefore, we will address the issue of the fine in our discussion of the alleged onerous probationary conditions under Assignment of Error Number Two.

This court has previously discussed the standard for reviewing excessive sentence claims:

[Louisiana Constitution Article 1], § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).

According to La.R.S. 14:39.2(D), a conviction of first degree vehicular negligent injuring requires that the offender "shall be fined not more than two thousand dollars or imprisoned with or without hard labor for not more than five years, or both." Therefore, the term of imprisonment ordered by the sentencing court is the maximum allowable under the statute.

Even though a penalty falls within the statutory sentencing range, it may still be unconstitutionally excessive:

In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citations omitted). "[T]he trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1[;] the record must reflect that he adequately considered these

7

guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983). "[M]aximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender." *State v. Quebedeaux*, 424 So.2d 1009, 1014 (La.1982). "The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." La.Code Crim.P. art. 881.4(D).

First degree vehicular negligent injuring is a very serious offense that, in this case, resulted in very serious injury to two people. G.R.'s injuries were life-threatening and potentially life-changing. His mother's injuries were very serious as well. Defendant has presented some mitigating factors in seeking a lesser sentence. Nevertheless, she placed herself in the situation that led to these injuries when she knew she had been drinking a considerable amount of alcohol. Then, after she pled guilty, but before she was sentenced in this case, she again drove when she knew she had been drinking a large amount of alcohol. These circumstances indicate that Defendant's experience in this case has not impressed her sufficiently enough to change her illegal behavior.

This court, quoting the trial court, noted in *State v. Morain*, 07-1207, p. 4 (La.App. 3 Cir. 4/2/08), 981 So.2d 66, 69, "[t]here are terrible consequences when you choose to drink and drive." The trial court found the *Morain* defendant "had to know the consequences of his decision to drink and drive" "[b]ased upon his life experiences" as a former police officer. *Id.*

In *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So.2d 665, the defendant's vehicle collided with another vehicle, injuring a woman and causing significant injuries, including a broken leg. The defendant fled the scene but was soon apprehended. His blood alcohol level was above the legal limit. He pled guilty to

8

first degree vehicular negligent injuring and hit-and-run charges, and his traffic violations were dismissed.

The second circuit found the defendant's maximum sentence of five years at hard labor to be excessive based on "only one prior" DUI charge to which the defendant pled guilty to reckless operation. It found the maximum sentence was historically reserved for "cases where the defendant had a significant history of similar prior offenses and where there was evidence of life-altering, serious or disabling injury to the victims." *State v. Cozzetto*, 42,259, p. 7 (La.App. 2 Cir. 8/15/07), 962 So.2d 1225, 1230.

The Louisiana Supreme Court did not agree with the second circuit's factual assessment. The trial court correctly found the defendant fled the scene because of his "extreme intoxication" and thereby "placed himself among the most blameworthy offenders." *Cozzetto*, 974 So.2d at 666. Based on the defendant's blood alcohol level of 0.23, a prior offense resulting from excessive alcohol use, and the victim's injuries, the supreme court held the second circuit "did not provide an adequate basis for substituting its judgment as to an appropriate sentence for that of the trial judge." *Id.* The supreme court reinstated the maximum sentence.

Here, the record indicates that Defendant had no prior felony convictions. The trial court considered the "major injur[ies] to this young baby and his mother" and found that Defendant placed herself "in a very volatile situation and drinking and driving." The accident occurred because Defendant chose to drink and drive, and she did the same thing again after she caused these serious injuries. While Defendant has no felony record, we find her actions to be egregious and to justify the imposition of a maximum sentence.

9

We also point out that Defendant received a substantial benefit as a result of her guilty plea. Defendant pled guilty to only one of two counts of first degree vehicular negligent injuring, though clearly two people were seriously injured as a result of her actions. The charge of hit-and-run driving carried a potential sentencing exposure of up to ten years in prison with or without hard labor and/or a fine of up to five thousand dollars. La.R.S. 14:100(C)(2). This charge was dismissed when Defendant entered her open-ended plea. Four years of her five-year sentence for first degree vehicular negligent injuring were suspended. Provided Defendant abides by and successfully completes the terms and conditions of her probation, she will spend only twenty percent of her sentence in custody.

Accordingly, we find that a thorough review of the facts and circumstances in the record of this case clearly indicates that the trial court did not abuse its wide sentencing discretion in imposing the maximum sentence for Defendant with all but one year suspended and three years of supervised probation.

*ASSIGNMENT OF ERROR NUMBER TWO:*

Defendant contends the trial court erred in imposing conditions of probation that are "too onerous and not reasonably related to rehabilitation." She claims the requirements to attend two AA or NA meetings every week while on probation, perform forty eight-hour days of community service, complete a driver improvement program, complete one MADD impact panel, and pay the fine, costs, and fees imposed are so onerous that they "destine her for failure." We disagree.

In addressing Defendant's claim that her conditions of probation are "too onerous and not reasonably related to rehabilitation," it is important to remember the nature of Defendant's offense. Defendant was not merely intoxicated; her blood alcohol level was more than two-and-one-half times the legal limit. She caused serious, life-threatening injuries that will affect two victims for the rest of

10

their lives. After she pled guilty to the first degree vehicular negligent injuring of these victims, she was caught drinking and driving again and once more showed a blood alcohol level two-and-one-half times the legal limit. It is likely that Defendant may well benefit from attending two AA or NA meetings per week during her probationary period and completing a driver improvement program and a MADD impact panel. These requirements are rehabilitation-related and not excessive.

As to the fine, costs, and fees, we note that Defendant will have three years during her probation to pay these assessments and satisfy these obligations. The $2,000.00 fine is within the sentencing parameters, and the fees and costs are not disproportionate or statutorily impermissible. Again, we emphasize the fact that Defendant received a substantial benefit as a result of her guilty plea to only one of two counts of first degree vehicular negligent injuring, four of the five years of the maximum sentence for that conviction were suspended, and her felony hit-and-run charge was dismissed. Defendant argues that the conditions of her probation "destine her for failure." It is Defendant herself who is in charge of her destiny. We find no error by the trial court in the imposition of the conditions of Defendant's probation.

***ASSIGNMENT OF ERROR NUMBER THREE:***

According to Defendant, attendance at two AA or NA meetings regardless of the outcome of a substance abuse evaluation violates statutory requirements of La.Code Crim.P. art. 895 and her right to fundamental fairness required by the Fourteenth Amendment. She claims that the fact of the presence of alcohol does not make her an alcoholic, and she should not be treated like an alcoholic without an evaluation. Defendant cites no legal authority for this theory other than to argue that the trial court may not order a condition of probation not reasonably related to

11

her rehabilitation, and the attendance at meetings constitutes unconstitutional cruel and unusual punishment.

As discussed in Assignment of Error Number Two, we find that attendance at meetings, even in absence of a substance abuse evaluation, seems particularly geared toward Defendant's rehabilitation. Thus, under the facts and circumstances of this case, we find that an evaluation is not necessary to find that Defendant may derive great benefit from attendance at these meetings, and such attendance is closely related to her rehabilitation.

### ASSIGNMENT OF ERROR NUMBER FOUR:

Defendant argues the trial court erred in prohibiting her from driving a vehicle during the entirety of her probation unless the vehicle is outfitted with an ignition interlock device. She contends that the statute under which she was convicted, La.R.S. 14:39.2, makes no provision for the requirement of an interlock device; thus, the trial court erred in ordering the device as a condition of her probation.

We note, however, that La.R.S. 32:378.2 specifically authorizes a trial court to impose the use of an interlock device in DWI cases. While the instant case is not a DWI case per se, it is undisputed that Defendant was operating her vehicle while under the influence of alcohol with a blood alcohol content over two-and-one-half times the legal limit. Though that statute does not extend that power to the trial court in cases involving La.R.S. 14:39.2, it does not withhold that authority, either. We find that the omission of a provision for an interlock device from La.R.S. 14:39.2 does not prohibit the trial court from requiring one for those convicted under that statute. Accordingly, we find that the trial court did not err in ordering the installation of an interlock device as a condition of Defendant's probation.

***ASSIGNMENT OF ERROR NUMBER FIVE*:**

Defendant contends the trial court erred in ordering an amount of restitution which is subject to change and in allowing the probation officer to set up the payment schedule of that restitution. She argues the result is an indeterminate sentence because of the "delay in the finality of the restitution order."

The trial court ordered Defendant to pay restitution in the amount of $7,256.02 "to be paid over the course of probation on a schedule set by the probation officer." She offered both parties the opportunity to oppose the amount stating, "I will say[,] within 90 days of first signing up for probation, either the defense or the State has a right to have a restitution hearing set and traverse the amount based on an increase or decrease depending on what you later come to know."

We find that the trial court set "an amount certain" as required by La.Code Crim.P. art. 895.1. Defendant knows she is presently required to pay $7,256.02 in restitution. The only way that figure or amount will change is *if* Defendant or the State asks for a hearing within ninety days of first signing up for probation. If the amount changes at that time, Defendant will have an amended "amount certain."

However, La.Code Crim.P. art. 895.1(A)(1) requires the restitution payment to be "made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant." The trial court ordered Defendant's restitution "to be paid over the course of probation on a schedule set by the probation officer," without specifying a payment plan.

As discussed in the Errors Patent section above, assigning the formulation of the payment plan to a probation officer *without a provision for court approval* constitutes error. Therefore, we remand this case to the trial court with the instruction that either the trial court establish a restitution payment schedule or else

permit the probation officer to establish a restitution payment schedule, subject to approval by the trial court.

## DISPOSITION

Defendant's sentence and duly imposed conditions of probation are affirmed. This case is remanded to the trial court with the instruction that either the trial court establish a schedule of payment for the fines, fees, and restitution, or else permit the probation officer to establish same, subject to approval by the court.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**